IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 19, 2005

## BRAD EVERETT JONES v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 7361     Joseph H. Walker, III, Judge**

---

**No. W2004-02674-CCA-R3-PC  - Filed May 2, 2005**

---

The petitioner appeals the denial of his petition for post-conviction relief from his convictions for felony evading arrest, possession of a Schedule VI controlled substance, and driving on a revoked license, arguing that the post-conviction court erred in finding that his guilty pleas were knowing and voluntary and that he received the effective assistance of trial counsel. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Rebecca S. Mills, Ripley, Tennessee, for the appellant, Brad Everett Jones.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Tracey A. Brewer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On February 12, 2003, the petitioner, Brad Everett Jones, pled guilty in the Lauderdale County Circuit Court to felony evading arrest, a Class E felony; possession of a Schedule VI controlled substance (marijuana), a Class A misdemeanor; and driving on a revoked license, a Class B misdemeanor, in exchange for a two-year sentence as a Range II, multiple offender, with the sentence suspended on time served, which was to run consecutively to a suspended sentence in Dyer

County.[1] Thereafter, the petitioner filed a *pro se* petition for post-conviction relief on October 16, 2003, alleging ineffective assistance of counsel and a defective indictment. Post-conviction counsel was appointed, and an amended petition was filed on November 7, 2003, incorporating by reference the petitioner's original claims, as well as the additional claim that the petitioner's pleas were not knowing and voluntary. Among other things, the petitioner asserted in his original and amended petitions that trial counsel failed to properly investigate the case, failed to interview witnesses, failed to properly communicate with him, failed to explain the consequences of his guilty pleas, and failed to evaluate his mental competency. He further asserted that, because trial counsel did not fully explain the nature and consequences of the charges against him or the plea agreement, his pleas were not "informed and voluntary."

Trial counsel testified at the evidentiary hearing held on May 28, 2004, that she was employed by the public defender's office and was appointed by the court to represent the petitioner. Although she was ill during the preliminary hearing, at which the petitioner was represented by another public defender, she later met with the petitioner and discussed his case with him. Once the proceedings began in circuit court, all of the communication between the petitioner and trial counsel was by telephone, as "[the petitioner] failed to keep the in-office appointments." Trial counsel always responded to the petitioner's telephone calls "as quickly as [she] could" and scheduled several in-office visits with the petitioner, which he failed to keep. Trial counsel interviewed the arresting officer and discussed with him "in depth" the petitioner's arrest. She discussed with the petitioner the "pros and cons" of proceeding to trial on the evading arrest charge, which she told the petitioner would come down to a dispute between him and the officer "as to whether he stopped or didn't stop." She explained to the petitioner that the "jury could hear his testimony and the officer's testimony, . . . and then they would make a determination as to whose credibility they judged to be truthful." The petitioner also discussed with trial counsel his probated sentence in Dyer County, and trial counsel "advised him that he would need to speak with his probation officer to determine what the proceedings would be in Dyer County if he entered a plea." Trial counsel referred to a note in her file which indicated "that [the petitioner] was going to call his probation officer and make a determination before he told me whether he wanted to enter a plea or not." Trial counsel never contacted the petitioner's probation officer because that was "his responsibility and it was his decision to make." Trial counsel could not recall the petitioner's demanding a trial; however, she stated she "never pressured him one way or the other," but discussed "at length" and "fairly thoroughly" the petitioner's options concerning going to trial versus pleading. She also discussed with the petitioner over the phone the details of the arrest warrants and indictments, and he was given a copy of the indictment when he was arraigned. Trial counsel acknowledged she never went

---

[1]The record on appeal does not contain indictments, judgment forms, the plea agreement, or a transcript of the guilty plea hearing. We have gleaned the facts from the order of the post-conviction court denying the petition. The record indicates that as an additional part of the plea agreement, the State chose not to prosecute the petitioner for delivery of a counterfeit controlled substance, a Class E felony, stemming from the same incident. Additionally, the petitioner's probation was apparently revoked in Dyer County as a result of the convictions underlying the present appeal, and he is currently incarcerated in the Tennessee Department of Correction on the Dyer County conviction. His collateral attack on the Lauderdale County convictions seems to be, as the post-conviction court noted, an effort to avoid incarceration on his Dyer County convictions.

to the "scene of the crime," but she stated she was familiar with the Halls area where the petitioner was arrested. Trial counsel read from the records in the petitioner's file, which indicated he failed to keep two scheduled appointments at trial counsel's office and which also showed the dates of telephone conversations between the petitioner and trial counsel. On January 14, 2003, trial counsel conveyed to the petitioner by telephone the offer made by the State, and on February 11, 2003, the petitioner advised trial counsel that he wished to accept the plea agreement.

The petitioner testified that he was currently incarcerated in the Tennessee Department of Correction on a separate charge from Dyer County. He was under the impression that the form waiving a preliminary hearing that he initially signed was actually so he could "get back to Dyer County because [he] was being held in Dyer County jail, so [he] signed off on the papers." The petitioner tried to call trial counsel "[b]etween five and seven times," but only spoke to her the day before he entered his plea. He went to trial counsel's office twice to schedule an appointment or meet with trial counsel, but she was not there. At no time were messages left that trial counsel had tried to call the petitioner. Trial counsel never discussed with the petitioner the "indictment, the elements of the crime, or the law as it applie[d]" to his case. Although the petitioner requested that trial counsel send an investigator "to check the crime scene," trial counsel had not done so by February 11, two days before trial, so the petitioner "felt like, well, I'll take the plea bargain." However, the petitioner also testified that "a few days before trial" he advised trial counsel that he wanted to go to trial and subpoena Investigator Newman and Tasha Foster, but trial counsel never contacted or interviewed Foster. The petitioner was also under the impression that his sentence of "two years would be ran [sic] concurrent to the time if [he] had to serve any time in Dyersburg [Dyer County]." Although the petitioner asked trial counsel to contact his probation officer, trial counsel told the petitioner "it was in the best of [his] ability to contact them."

Assistant Chief Investigator Ralph Newman, a fifteen-to-sixteen-year veteran of the Halls Police Department, testified that he observed the petitioner driving in Halls on May 3, 2002, and attempted to make a traffic stop after the petitioner failed to use a turn signal making a right turn. After Investigator Newman activated his blue lights and siren, the petitioner "sped up" to about fifty miles per hour in a thirty-miles-per-hour zone and made several turns, traveling a few blocks until he stopped on a dead-end street. Investigator Newman asked the petitioner for his license, and the petitioner responded that it was "revoked." As Investigator Newman was returning from his cruiser after checking the petitioner's driver's license status and license plate information, the petitioner "bailed" from the car and "ran down the ravine." Investigator Newman chased the petitioner on foot, but it is unclear from the record when the petitioner was taken into custody. Inside the petitioner's vehicle, Investigator Newman found "three or four bags of white powder substance," which appeared to be cocaine. Tests results revealed, however, that the powder was not a controlled substance. Also in plain view in the ashtray of the vehicle was a "roach" and a "small amount of marijuana." Investigator Newman stated he "may have" discussed the case with trial counsel, but he could not recall with certainty.

On June 1, 2004, the trial court entered an order denying the petition, finding, among other things, that the "Petitioner was adequately informed of the nature and consequences of the plea

agreement" and that trial counsel "discussed the legal issues" with the petitioner and "made adequate investigation of the facts" of the case. The court further found that the petitioner's prior experiences in the criminal justice system had made him "aware of the nature of the proceedings" and that he "made a decision to enter a plea of guilty freely and voluntarily." Thereafter, the petitioner filed a timely notice of appeal to this court.

## ANALYSIS

### I. Post-Conviction Standard of Review

The petitioner argues the post-conviction court erred in finding that he received the effective assistance of counsel and that his guilty pleas were knowing and voluntary. The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns, 6 S.W.3d at 461.

### II. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. When a petitioner's ineffective assistance claim is made in the context of a conviction stemming from a guilty plea, he must prove a reasonable probability that were it not for deficiencies in his counsel's performance, he would not have pled guilty, but instead would have insisted on going to trial. See Shazel v. State, 966 S.W.2d 414, 416 (Tenn. 1998).

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley, 960 S.W.2d at 580. For this reason, courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The petitioner contends on appeal that trial counsel "committed prejudicial error" by failing to investigate the crime scene, failing to "investigate the investigative officer," failing to call necessary witnesses, failing to fully explain the indictments and the facts of the case, and failing to adequately meet with him. The post-conviction court concluded that the petitioner had failed to meet his burden of demonstrating he was denied the effective assistance of counsel:

> [Trial counsel] testified at the post conviction hearing that she met with the Petitioner personally, and with the [petitioner] by telephone. The Petitioner missed numerous appointments. . . .
>
> [Trial counsel] discussed the legal issues with Petitioner and made investigations as requested by him. She worked out a plea arrangement which was acceptable to petitioner, which was suspended on time served.
>
> . . . .
>
> At the plea hearing, the petitioner was asked if he was satisfied with [trial counsel's] performance, and he indicated that he was satisfied.
>
> . . . .
>
> It is not ineffective assistance of counsel to discuss the options with a client and make an informed decision, which was done in this case. . . .

. . . .

The Court finds that petitioner has failed to establish the factual allegations contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210. The petitioner has not shown that (a) the services rendered by trial counsel were deficient and (b) the deficient performance was prejudicial. The petitioner has not shown that the services rendered or the advice given was below the range of competence demanded of attorneys in criminal cases. The petitioner has not shown that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.

The record fully supports the findings and conclusions of the post-conviction court. Although trial counsel admitted she did not go to the "crime scene" to conduct a personal investigation, she stated she was familiar with the "Halls area." Additionally, she interviewed Investigator Newman and discussed with him "in depth" the details of the petitioner's arrest. Trial counsel spoke with the petitioner numerous times on the telephone, met with him personally at least once, and scheduled at least two in-office appointments, which the petitioner failed to keep. Trial counsel supported her testimony with office records detailing her efforts to contact the petitioner and his failure to keep his appointments. Trial counsel also testified that she discussed the indictments and the arrest warrants with the petitioner over the telephone, and the petitioner was given a copy of the indictments at his arraignment. She also discussed with the petitioner "at length" and "fairly thoroughly" the various aspects of pleading guilty versus going to trial. In fact, when questioned by his own attorney at the post-conviction hearing, the petitioner admitted that he was familiar with the arrest warrant affidavit and had discussed the indictments with trial counsel:

Q.     And the only date that you, in fact, sat down and discussed this case in person with [trial counsel] was on the date you pled; is that correct?

A.     Yes, ma'am.

Q.     Any time during that day did you go over the warrants and indictments with [trial counsel]?

A.     Well, we had talked about why did they not charge me with Schedule VI drugs, but they charged me with a Schedule II drug. They did not -- my initial arrest wasn't a charge of a Schedule II drug -- I mean a Schedule VI drug. It was a charge of a Schedule II drug. So I was like, Doesn't that make the difference between marijuana and cocaine? Then all of a sudden, when it went to the lab and it came back from the lab it wasn't cocaine, so now you charge me with marijuana?

Finally, although the petitioner asserts that trial counsel failed to call "necessary witnesses," we assume that since there was no trial, the petitioner is actually asserting that trial counsel failed to adequately investigate or question potential witness Foster. However, trial counsel was not asked

-6-

about Foster, nor was the witness produced, at the post-conviction hearing. Since we cannot speculate as to what the testimony of Foster would have been had there been a trial, the petitioner has failed to establish that he was prejudiced by counsel's actions as they relate to Foster. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Thus, we agree with the post-conviction court that the petitioner has failed to show that trial counsel provided ineffective assistance; therefore, he is not entitled to relief on this claim.

### III. Voluntariness of Guilty Plea

The petitioner also contends that his guilty pleas were not knowing or voluntary because trial counsel "neglected to fully inform the [petitioner] about the penalty that could be imposed as a result of a guilty plea and her failure to so duly advise him prejudiced the [petitioner]." In fact, the true thrust of the petitioner's complaint is that trial counsel "failed to fully explain the consequences of his guilty plea to the [petitioner] and the time he received in Lauderdale County, Tennessee would run consecutively to his time in Dyer County, Tennessee." However, the record supports the post-conviction court's finding that the petitioner was fully informed concerning the consequences of his plea agreement and that his pleas were knowing, intelligent, and voluntary.

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242, 89 S. Ct. at 1711. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Since the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

Although the guilty plea transcript is not in the record on appeal, the post-conviction court reviewed the transcript and made several references to it in the order denying the petition:

The transcript of the plea hearing was filed herein. The defendant was informed what the sentence on the plea entered would be. The defendant agreed to the sentence, which was suspended. He was told that the sentences in Lauderdale [County] would be concurrent, but consecutive to the Dyer County convictions. He was asked[,] "Are you on probation out of Dyer County" and responded[,] "Yes, sir." The defendant was asked if he was satisfied with the representation of [trial counsel] and he stated he was, and that he felt that he had adequate time to meet with her and discuss this case and any defense to these charges. The defendant testified that no one had forced him to enter this plea of guilty, and that he did not have any questions about the proceeding.

. . . .

The Petitioner entered a plea of guilty on February 12, 2003, and was sentenced under the agreement to the minimum sentence, and the State dropping another felony charge. The defendant was a multiple offender.

. . . .

Nothing in the record of the plea indicates that the defendant's plea was involuntary. The record reveals that the trial court thoroughly questioned the defendant about his decision to plead guilty and that the defendant was well-aware of his right to proceed to trial and the possible consequences of either action before he pled guilty.

The transcript indicates that the defendant understood he was entering a plea of guilty to the various offenses. The transcript indicates that when he was entering a plea, when asked whether he plead guilty or not guilty, he said yes sir. A complete reading of the transcript shows that the defendant knew he was entering a guilty plea. He had gone over a "Plea of guilty" form with his attorney.

. . . .

. . . The Lauderdale County sentence is consecutive to the Dyer County sentence, which was explained to Petitioner at the plea hearing.

The post-conviction court considered the evidence presented at the evidentiary hearing and concluded that it, too, indicated that the petitioner's pleas were knowing and voluntary:

The petitioner's testimony at the post conviction hearing was not credible.

. . . It is not the guilt that petitioner objects to, but the sentence he received in Dyer County.

-8-

. . . .

The Court finds that Petitioner was adequately informed of the nature and consequences of the plea agreement, the possible classification as a multiple offender, the punishment to be received. . . .

The Court finds that the [petitioner] actually understood the significance and consequences of the particular decision to plea[d] guilty and the decision was not coerced. The [petitioner] was fully aware of the direct consequences of the plea. The [petitioner] had been through plea proceedings on prior occasions, and was aware of the nature of the proceedings and made a decision to enter a plea of guilty freely and voluntarily.

Again, the record fully supports the findings and conclusions of the post-conviction court. Because we are not able to review the transcript of the guilty plea hearing due to its exclusion from the record, we must presume the trial court's analysis is correct on appeal. Additionally, the petitioner failed to establish by clear and convincing evidence at the post-conviction hearing that his pleas were not knowing and voluntary. Trial counsel testified that she fully explained the plea agreement to the petitioner:

He had an offer of two years at 35 percent, suspended on time served, which I explained to him if he entered the plea he would not get any jail time for Lauderdale County. He and I discussed the Dyer County repercussions, and he made a decision whether he desired to enter the plea and take time served for this county and deal with Dyer County however way that he could. But that was his decision. I never pressured him one way or the other.

. . . .

Q.    All right. And in working out the plea arrangement here in Lauderdale County, would you have discussed how that would have an impact on his Dyer County charges?

A.    Yes.

Q.    And what was that discussion?

A.    Basically that on entering a plea when someone was on probation, that that can violate their probation. Normally, I advise my client if they are out that they need to speak with their probation officer to determine whether that plea entry would trigger a violation. Sometimes it does, sometimes it doesn't. The fact that this was

going to be a time-served plea might have factored into whether that particular probation officer would have filed a probation violation in Dyer County.

Q.    Well, in fact, he did receive the minimum sentence here that he could possibly have received, two years at 35 percent with time served; is that not correct?

A.    Yes, that's correct. As well as the fact that in this particular case there was a cocaine charge originally. When that matter was sent to the lab it came back as not being cocaine, but it was packaged in a way that the officer suspected that it was. There was some discussion that if [the petitioner] chose not to accept the plea that there would be a subsequent indictment for a counterfeit controlled substance. As a result of this plea, that charge was never brought.

Q.    So in essence your representation resulted in him getting a minimum charge with time served, and the agreement with the State was that they would not pursue another felony charge; is that correct?

A.    That's correct.

Following our analysis of the Blankenship factors in the present case, we conclude the guilty pleas were knowing, intelligent, and voluntary. The post-conviction court noted the petitioner's familiarity with criminal proceedings including his suspended sentence in Dyer County. Additionally, the court determined that trial counsel was competent and that the petitioner had sufficient opportunity to confer with counsel about his alternatives. The petitioner was advised that he would be receiving the minimum sentence within the range and that he would not have to serve any time in jail on the charges. Finally, he was also advised that the State, in exchange for the pleas, would not pursue an additional felony charge on the counterfeit controlled substance. Thus, although the petitioner claims he did not understand the consequences of his guilty pleas, the record is abundantly clear that he was repeatedly informed of the consequences at great length, both by trial counsel and the trial court. Additionally, the petitioner admitted at the post-conviction hearing that trial counsel made it clear to him that it was his responsibility to contact his Dyer County probation officer to discuss the ramifications on his Dyer County sentence of his pleading guilty in Lauderdale County. We, therefore, conclude that the record fully supports the post-conviction court's determination that the petitioner's guilty pleas were knowing and voluntary.

## CONCLUSION

Following our review, we affirm the denial of the petition for post-conviction relief.

_____

ALAN E. GLENN, JUDGE

-10-